**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
*By jpayton at 4:44 pm, Jan 12, 2016*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number <u>13-10860</u> |
| WILLIAM JEFFREY BROOKS, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

### OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by William Jeffrey Brooks ("Debtor") regarding his objections to the proofs of claim filed by RREF II WBC Acquisitions ("RREF"). Debtor argues RREF lacks standing to file the claim because it is not duly authorized to do business in Georgia. Debtor further asserts he is not personally liable for RREF's claims because his liability was extinguished by a pre-petition settlement. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, Debtor's motion for summary judgment is denied.

### UNDISPUTED FACTS

Prior to Debtor's bankruptcy, Brooks-Mohr Builders, LLC ("BMB")[1] executed numerous promissory notes in favor of BB&T ("BMB

---

[1] Debtor either directly or indirectly through a wholly owned entity named William J. Brooks, Inc. has a 50% membership interest

notes"). In connection with the BMB notes, Debtor unconditionally guaranteed payment and performance of BMB's obligations to BB&T. Post-petition, BB&T assigned its interest in these loans to RREF. RREF filed numerous proofs of claim in Debtor's bankruptcy based upon the personal guaranties executed by Debtor. See Claim Nos. 32-45. Debtor has objected to claim numbers 32-47 filed by RREF.[2] Dckt. No. 463.

Pre-petition, BB&T declared all the BMB notes to be in default and accelerated the entire balance and demanded payment. BB&T filed a verified complaint in the United States District Court for the Southern District of Georgia ("the District Court Litigation") seeking to establish and liquidate its claims. Debtor filed an answer and counterclaim in the District Court Litigation. Ultimately, the parties entered into a pre-petition settlement agreement resolving the District Court Litigation ("Settlement Agreement" or "Settlement").

_____

in BMB.

[2]    There is no dispute that BB&T made fourteen (14) loans to BMB. See Dckt. No. 543, p. 5. RREF disputes Debtor's statement that between December 2008 and April 2010, BMB executed a series of sixteen (16) original notes in favor of BB&T. RREF contends WJ Brooks, Inc. was the borrower on two of sixteen notes not BMB and points out that the Settlement Agreement only relates to the 14 BMB Notes. Id. at 10. Fourteen modified notes and fourteen modified security deeds/agreements are attached to the Settlement Agreement. See Dckt. No. 528, Ex. G. This dispute of fact is not material in the issues considered in this summary judgment motion.

2

The Settlement Agreement provides:

The BMB Notes will each be modified to provide that commencing on the Effective Date, the outstanding principal balance of each BMB Note will be amortized over a 15 year schedule, with the final payment of all principal, accrued interest thereon and fees and charges outstanding due five (5) years from the Effective Date hereof.   The interest rate, interest rate floor, and all other payment terms, including but not limited to BMB's obligation to pay monthly interest, insurance, taxes, maintenance, etc., under each of the BMB Notes will remain the same as they are as of the Effective Date.   Obligors hereby agree to execute those certain Note Modification Agreements and Security Deed modifications attached hereto collectively as "Exhibit A" for each BMB Note containing the modified BMB Note terms as set forth herein.

Settlement Agreement, Dckt. No. 528, Ex. G, p. 3, ¶2(b).

Paragraph 7 of the Settlement Agreement provides:

Limited Release of Obligors by BB&T.   Except with respect to the obligations of the Obligors under the BMB Loan Documents as they are incorporated herein and modified herein, BB&T hereby waives, remises, releases, and forever discharges each of the Obligors, their predecessors or their successors, assigns, affiliates, shareholders, directors, officers, accountants, attorneys, employees, agents, representatives, and servants of, from and against any and all claims, actions, causes of action, suits, proceedings, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity, or otherwise, which BB&T ever had or now has for or by reason

3

> of any matter, cause, or anything whatsoever to
> this date relating to or arising out of the
> claims and allegations stated and pleaded in
> the Lawsuit.   The terms of this waiver and
> release provided by this paragraph shall not
> apply to or limit in any way the Obligors'
> obligations to BB&T under this Agreement or
> under the BMB Loan Documents as they are
> incorporated herein and modified herein.

Id. at p. 5, ¶7.  "BMB Notes Loan Documents" are defined to include

the guaranties executed by Debtor ("BMB Notes Guaranties"), the BMB

Notes, the BMB Notes Security Deeds, and "all other documents,

instruments and agreements securing or relating to the BMB Notes, as

amended, modified and/or restated from time to time." Id. at p. 2.

The "BMB Notes" and "BMB Notes Security Deeds" are respectively

defined as the notes and security deeds executed at the loan

commencement date and modified thereafter.   Id. at p. 1-2.

"Obligors" includes BMB, Debtor, and another guarantor.  Id. at p.

1.

Paragraph 8 is a limited release of BB&T by the Obligors

stating:

> Limited Release by BB&T by Obligors.  Obligors
> hereby waive, remise, release, and forever
> discharge BB&T, its predecessors and its
> successors, assigns, affiliates, shareholders,
> directors, officers, accountants, attorneys,
> employees, agents, representatives, and
> servants of, from and against any and all
> claims, actions, causes of action, suits,
> proceedings, contracts, judgments, damages,
> accounts, reckonings, executions, and

4

> liabilities whatsoever of every name and
> nature, whether known or unknown, whether or
> not well founded in fact or in law, and
> whether in law, at equity, or otherwise, which
> the Obligors ever had or now have for or by
> reason of any matter, cause, or anything
> whatsoever to this date relating to or arising
> out of the claims and allegations stated and
> pleaded in the Lawsuit, including but not
> limited to such claims and allegations stated
> and pleaded by the Obligors in their Verified
> Answer, Counterclaims, the FDIC Complaint, the
> GEOC Complaint or related to any of the Land
> Note Loan Documents or the BMB Notes Loan
> Documents. The terms of this waiver and
> release shall survive the termination of this
> Agreement.

_Id._ at 5, ¶8. Attached to the Settlement Agreement are the modifications to the BMB notes, security deeds and security agreements, but there are no separate documents modifying the personal guaranties.

Debtor argues paragraph 15 of the Settlement Agreement supports his position that Debtor is no longer liable under the guaranties because the Settlement Agreement with its attachments became the sole documents by which the parties were to abide, contending "[i]n fact, the Settlement Agreement 'constitutes and embodies the entire understanding and agreement between the Parties . . . and supersedes any and all prior agreements . . . .'" Paragraph 15 of the Settlement Agreement provides:

> Except as provided in the BMB Loan Documents
> incorporated herein and/or modified herein,

> this Agreement constitutes and embodies the entire understanding and agreement between the Parties hereto with respect to the subject matter hereof and thereof and supersedes any and all prior agreements, promises, negotiations, representations, understandings or inducements, whether express or implied, oral or written regarding the terms hereof. This Agreement may not be modified, altered or amended except by an agreement in writing signed by all of the Parties hereto. Any provision of this Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof in that jurisdiction or affecting the validity or enforceability of such provision in any other jurisdiction. Any warranty or representation made in this Agreement shall be deemed to be material and shall survive after the termination and/or satisfaction of the terms of this Agreement. Nothing herein shall impair, affect, or limit any right or claim of BB&T which it might have against the Obligors for breach of any warranty or representation contained herein.

Dckt. No. 528, Ex. G, pp. 6-7, ¶15.

Debtor points out that the modified BMB notes, security deeds and security agreements executed in connection with the Settlement Agreement are all signed in Debtor's capacity as a member and manager of BMB, not in his individual capacity as a personal guarantor. In fact, the guarantor signature block is left blank on the modified BMB Notes, and Debtor argues the personal guarantors are not referenced in the modified notes or modified security deeds/security agreements. Debtor argues he was released from the

6

guaranty by the terms of the Settlement Agreement and therefore is entitled to summary judgment.  Namely, Debtor contends the language of the release in paragraphs 7 and 15 as well as the blank guarantors' signature blocks on the modified notes show he was released.  Furthermore, Debtor contends he would not have entered into the Settlement Agreement without being released from the guaranty.

RREF disagrees with Debtor's interpretation of the Settlement Agreement, and contends no language in the Settlement Agreement releases Debtor from his personal guaranties.  Converse to Debtor's position, RREF argues the Settlement Agreement incorporates the pre-settlement loan documents including the guaranties and only modifies the BMB notes and security deeds/agreements because those were the only documents that needed to be amended.  RREF argues there was no need for Debtor to sign any of the documents in his individual/guarantor capacity because the guaranties were incorporated by the terms of the documents executed in connection with the Settlement and remain in full force and effect.  RREF further points to BB&T's proofs of claim as evidence of BB&T's belief that the Settlement Agreement did not release Debtor from the guaranty.[3]  RREF also points to the language of the release, "[T]he

_____

[3]  BB&T assigned the loans to RREF post-petition.

waiver and release provided by this paragraph shall not apply to or limit in any way the Obligors' obligations to BB&T under this Agreement or under the BMB Loan Documents as they are incorporated herein and modified herein." Dckt. No. 528, Ex. G, p. 5. By definition, "Obligors" include guarantors. Id. at p. 1.

> The modified BMB Notes state in pertinent part:
>
> It is expressly understood and agreed that this Agreement is a modification only and not a novation. The original obligation of the Borrower(s) as evidenced by the Promissory Note above described is not extinguished hereby. It is also understood and agreed that except for the modification(s) contained herein said Promissory Note, and any other Loan Documents or Agreements evidencing, securing, or relating to the Promissory Note and all singular terms and conditions thereof, shall be and remain in full force and effect. This Agreement shall not release or affect the liability of any co-makers, obligors, endorsers, or guarantors of said Promissory Note. Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to the terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank, including without limitation the Promissory Note. Bank expressly reserves all rights as to any party with right of recourse on the aforesaid Promissory Note.

Dckt. No. 528, Ex. G, p. 76. Similarly, the modified security deeds/security agreements state: "Except as herein expressly amended, each and every term, condition, warranty and provision of the Loan Documents shall remain in full force and effect, and such

8

Loan Documents are hereby ratified, confirmed and approved by Borrower." _Id._ p. 20. The modified security deeds/security agreements define "Loan Documents" as "[t]he Loan Agreement, the Note, the Security Deed, and any and all other documents, instruments and agreements executed in connection therewith. . . ." _Id._ p. 19.

RREF also points to the language of the guaranties which states:

> This agreement shall inure to the benefit of Bank, its successors and assigns, and the owners and holders of any the indebtedness, obligations and liabilities hereby guaranteed, and shall remain in force until a written notice revoking it has been received by Bank; but such revocation shall not release the undersigned from liability to Bank, its successors and assigns, or the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, for any indebtedness, obligation or liability of the Borrower which is hereby guaranteed and then in existence or from any renewals, additional advances, extensions, or modifications thereof in whole or in part, whether such renewals, additional advances, extensions or modifications are made before or after such revocation, with or without notice to te undersigned.

_See_ Guaranty, Claim No. 18, p. 9. RREF argues when the Settlement Agreement and the attached modified notes and security deeds/security agreements are read in their entirety, the Settlement Agreement clearly incorporates the guaranties and did not release

9

the guarantors.

Furthermore, Debtor argues RREF is a foreign corporation, not duly registered to do business in Georgia and therefore may not file and defend any proofs of claim in this matter. Debtor does not dispute the existence of the debt to RREF, rather he argues he was released from the debt by the Settlement Agreement. Debtor argues RREF has the burden of proof to establish that its conduct within Georgia does not require registration.

Conversely, RREF contends it is exempt from qualification and disagrees with Debtor's allocation of the burden of proof. RREF provided the affidavit of Dan Gower ("Gower"), an asset manager employed by Rialto Capital Advisors, LLC ("Rialto"). Dckt. No. 534, Ex. 4. Gower avers that Rialto is RREF's attorney in fact and that RREF has no employees, offices, or business records in the State of Georgia. RREF asserts Rialto is registered to do business with the Georgia Secretary of State and conducts RREF's business in Georgia, however Gower's affidavit does not state that Rialto is registered with the Georgia Secretary of State nor does it state Rialto conducts all of RREF's business in Georgia. Id. RREF contends since it does not conduct business within Georgia, it is not required to register with the Georgia Secretary of State.

RREF argues Debtor lacks standing to object to its proofs

10

of claims because there is no evidence that this is a surplus chapter 7 bankruptcy[4] and therefore Debtor lacks a pecuniary interest to object to its claims; rather the chapter 7 trustee is the proper party in interest to assert any such objections.  RREF and RES-GA Bay St. Louis, LLC have filed a complaint objecting to Debtor's discharge under 11 U.S.C. §727.  <u>See</u> Adversary Proceeding No. 14-01016.

### CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[4]   RREF points to Debtor's latest amended Schedule B listing $53,625.00 in personal property and Schedule A listing assets of $82,325.00.  <u>See</u> Dckt. Nos. 1 and 471.  RREF compares these figures to the claims register where there are over $20 million in claims. Even excluding any objected to proofs of claims and any proofs of claims filed by BB&T, the total claims exceed $4.2 million, well in excess of Debtor's assets.

✎AO 72A
(Rev. 8/82)

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 (internal quotations omitted).  Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>First Nat'l Bank of Arizona v. Cities Servs. Co.</u>, 391 U.S. 253, 288-89 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion.  All reasonable doubts and inferences should be resolved in favor of the opponent." <u>Amey, Inc. v. Gulf Abstract & Title, Inc.</u>, 758 F .2d 1486, 1502 (11th Cir. 1985) (citations omitted).

**<u>Standing and Qualification.</u>**

RREF claims Debtor lacks standing in a chapter 7 bankruptcy to object to claims because there is no reasonable possibility that the case will produce a surplus. Debtor argues RREF's failure to duly qualify to do business in Georgia prevents it from filing and defending its proofs of claim.  For the following reasons, the Court finds both parties may proceed in this contested matter.

12

**Debtor's Standing.**

To have standing in a bankruptcy case, courts consider two matters--constitutional requirements and a party's pecuniary interest in the outcome of the controversy.  See E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990)("In order to analyze standing, the Supreme Court has formulated a two-component framework, consisting of 'irreducible' constitutional requirements and prudential considerations) citing Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 472 (1982);  In re Ring, 178 B.R. 570, 575 (Bankr. S.D. Ga. 1995)("A plaintiff must overcome a number of constitutional and 'prudential' hurdles in order to gain standing in federal court.").  The United States Supreme Court set forth a three-part test for constitutionally mandated standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  For the

13

AO 72A
(Rev. 8/82)

reasons discussed in this opinion, Debtor has an injury in fact that may be addressed in this summary judgment motion.

RREF has filed a §727 complaint against Debtor under which Debtor may be denied a bankruptcy discharge. Debtor has a particularized imminent injury because if this §727 action is successful, Debtor would remain liable for RREF's debt which he argues he does not owe. This is a sufficient interest in the administration of the bankruptcy estate to merit him standing to object to the claim of the very creditor who filed the §727 action. See Wellman v. Ziino (In re Wellman), 378 B.R. 416 n. 5 (B.A.P. 9th Cir. 2007)(chapter 7 debtor had standing to object to claim because the debt was not discharged as a result of the judgment denying her discharge under §727(a)(4)); In re O'Donnell, 326 B.R. 901 (B.A.P. 6th Cir. 2005)(Debtor had standing to object to claim of creditor where creditor had filed a complaint objecting to debtor's discharge and objecting to the dischargeability of creditor's debt) citing In re Willard, 240 B.R. 664 (Bankr. D. Conn. 1999).

For these same reasons, Debtor also has a pecuniary interest sufficient to have standing to object to RREF's claims. "Bankruptcy standing is narrower than Article III standing . . . [T]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy

14

proceedings." <u>In re Cult Awareness Network, Inc.</u>, 151 F.3d 605, 607 (7th Cir. 1998). Pursuant to 11 U.S.C. §502(a) a filed proof of claim is deemed allowed unless a "party in interest" objects. 11 U.S.C. §502(a). The Advisory Committee Note to Bankruptcy Rule 3007 explains:

> While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to §502(a) of the Code, however, any party in interest may object to a claim. But under §704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims.

Fed. R. Bankr. P. 3007 advisory committee's note.

Generally in a chapter 7 bankruptcy case, the chapter 7 trustee is the proper party to review and object to proofs of claim. <u>See In re Trusted Net Media Holdings, LLC</u>, 334 B.R. 470, 475 (Bankr. N.D. Ga. 2005)("the majority of courts have ruled that a chapter 7 trustee alone may file objections to proofs of claim."). In the chapter 7 context, the term "party in interest" is not defined. Most courts have held that most chapter 7 debtors do not qualify as a "party in interest" with standing to object to claims because the claim allowance/disallowance in a non-surplus chapter 7 bankruptcy case normally only affects the pecuniary rights of creditors as it

15

affects the distribution available for such creditors.  Tucker v. Mukamal, 616 F. App'x 969, *972 (11th Cir. Sept. 4, 2015)(where chapter 7 debtor would not receive a distribution from the estate, debtor did not have standing to appeal order closing case); In re Cult Awareness Network, Inc., 151 F.3d 605, 607 (7th Cir. 1998)("[T]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings."); see also In re Costello, 184 B.R. 166, 168 (Bankr. M.D. Fla. 1995).  However, some courts have recognized exceptions to this general rule such as:  when the debt at issue may not be subject to discharge.  In re Steffen, 2009 WL 890124, at *1 (M.D. Fla. March 31, 2009)(debtor had standing where claim was not dischargeable); In re Cherne, 514 B.R. 616, 621 (Bankr. D. Idaho 2014)("there are two recognized exceptions to the proposition that a chapter 7 debtor lacks standing to object to a creditor's proof of claim: (1) when disallowance of the claim would create a surplus case, with the excess amounts payable to the debtor; and (2) where the claim at issue would not be dischargeable.") citing In re Wellman, 378 B.R. at 416 n. 5 (a chapter 7 debtor has "[s]tanding to object to claims . . . when there is a sufficient possibility of a surplus to give the chapter 7 debtor a pecuniary interest or when the claim involved will not be discharged."); In re O'Donnell, 326

16

B.R. at 901 (debtor has standing to object when claim at issue may not be discharged); <u>In re Meier</u>, 2015 WL 1756820, *2 (Bankr. N.D. Ill. April 13, 2015)(debtor had standing to object to claim where claim was asserted to be nondischargeable); <u>but see</u> <u>In re Adams</u>, 424 B.R. 434, 437 (Bankr. N.D. Ill. 2010)(the effect of such nondischargeable claims upon debtor is generally indirect and granting standing to every debtor who happens to be subject to some nondischargeable claim would interfere with the public policy of the prompt administration of chapter 7 cases).

Given the facts and circumstances of this particular case, where Debtor is objecting to the claim of the creditor that has filed a §727 complaint, Debtor has a pecuniary interest sufficient for standing to object to RREF's claims.   Therefore, RREF's objection to Debtor's standing is overruled.

### <u>RREF's Qualification to Do Business.</u>

Pursuant to O.C.G.A. §14-11-702(a) a foreign limited liability company transacting business in this state is required to obtain a certificate of authority from the Georgia Secretary of State subject to certain exceptions set forth in O.C.G.A. §14-11-702(b).   Debtor contends RREF cannot file or defend its proofs of claim because it is neither duly qualified to do business in Georgia, nor exempt from such qualifications.  <u>See</u> O.C.G.A. §14-

17

11-711 ("A foreign limited liability company transacting business in this state may not maintain an action, suit, or proceeding in a court of this state until it is authorized to transact business in this state."). Conversely, RREF contends its conduct is allowed under the Georgia Code. In support of its position, RREF provided the affidavit of Gower, an asset manager employed by Rialto. Gower avers that Rialto is RREF's attorney in fact and RREF has no office, no employees and no business records in Georgia. RREF asserts Rialto is registered to do business with the Georgia Secretary of State.[5]

RREF contends the Georgia Code allows it to collect its debt and defend its interests regarding its proofs of claim in this bankruptcy case even if RREF is a foreign business not qualified to conduct business in Georgia. Georgia Code §14-11-711[6] requires

---

[5] In the face of these arguments, Debtor raises the issue of whether Rialto should be the entity filing and defending the RREF claims. However, the court need not address this issue because as set forth herein RREF has standing in its own right.

[6] O.C.G.A. §14-11-711 states:

(a) A foreign limited liability company transacting business in this state may not maintain an action, suit, or proceeding in a court of this state until it is authorized to transact business in this state.

(b) The failure of a foreign limited liability company to procure a certificate of authority does not impair the validity of any contract or act of the foreign limited liability company or prevent the foreign limited liability

AO 72A
(Rev. 8/82)

foreign limited liability companies transacting business in Georgia to register with the Georgia Secretary of State to maintain actions in Georgia courts. O.C.G.A. §14-11-711. However, the Georgia Code recognizes exceptions. Georgia Code §14-11-702(b) sets forth a non-exhaustive list of exclusions from the definition of "transacting business in this state" providing in pertinent part:

> (b) Without excluding other activities which may not constitute transacting business in this state, a foreign limited liability company shall not be considered to be transacting business in this state, for the purpose of qualification under this chapter, solely by reason of carrying on in this state any one or more of the following activities:
>
> (1) Maintaining or defending any action or administrative or arbitration proceeding or

---

company from defending any action, suit, or proceeding in any court of this state.

(c) A foreign limited liability company that transacts business in this state without registering as required by this chapter shall be liable to the state:

> (1) For all fees which would have been imposed by this chapter upon such foreign limited liability company had it registered as required by this article; and
>
> (2) If it has not been authorized to transact business in this state within 30 days after the first day on which it transacts business in this state, for a penalty of $500.00.

O.C.G.A. §14-11-711. For purposes of this analysis, the Court assumes this federal bankruptcy court is a "Court of this State" since the parties did not address this issue.

19

> effecting the settlement thereof or the
> settlement of claims or disputes;
>
> .
> .
> .
>
> (7) Making loans or creating or acquiring
> evidences of debt, mortgages, or liens on real
> or personal property or recording the same;
>
> .
> .
> .
>
> (8) Securing or collecting debts or enforcing
> any rights in property securing the same
>
> .
> .
> .
> .

O.C.G.A. §14-11-702(b).

Under this section, without qualifying to do business in Georgia, RREF may undertake all the actions it is pursuing in this bankruptcy court--acquiring evidences of debt, securing and collecting debts, enforcing its rights in the property, and maintaining or defending any action. See O.C.G.A. §14-11-702(b)(1)("maintaining or defending any action"), (7)("making loans or creating or acquiring evidences of debt"), and (8)("securing or collecting debts or enforcing any rights in property securing the same."); Powder Springs Holdings, LLC v. RL BB ACQ II-GA PSH, LLC, 754 S.E.2d 655, 659 (Ga. Ct. App. 2014)(where a foreign corporation had acquired loan documents, advertised and conducted the foreclosure sale, purchased the property at the foreclosure sale,

reported the sale and filed the confirmation petition and where plaintiff did not present any evidence showing that lender transacted any other business in Georgia, lender was not transacting business in Georgia); <u>Homac Inc. v. Fort Wayne Mortg. Co.</u>, 577 F. Supp. 1065 (N.D. Ga. 1983)(foreign corporation mortgagee which had already foreclosed on and brought action to repossess mobile home had not transacted business under statute exempting foreign corporations "securing or collecting debts or enforcing any rights in property securing the same," and, therefore, was not required to obtain certificate of authority to do business in order to maintain repossession action.).

This bankruptcy case was initiated by Debtor and RREF is attempting to defend its right to pursue and collect its purported debt and such conduct is permitted by Georgia Code §14-11-702(b) and §14-11-711(b). Under the circumstances, RREF's failure to procure a certificate of authority does not invalidate its contractual rights or prevent it from defending its proofs of claim or attempting to collect its purported debt. "[T]he failure of a foreign limited liability company to procure a certificate of authority <u>does not impair the validity of any contract</u> or act of the foreign limited liability company or prevent the foreign limited liability company <u>from defending any action, suit, or proceeding in</u>

21

any court of this state. O.C.G.A. §14-11-711(b)(emphasis added); In re McClelland, 2011 WL 2461885, at *9 n. 1 (Bankr. N.D. Ga. June 8, 2011)(rejecting the argument that a contract was unenforceable when the corporation was not authorized to transact business in Georgia stating, "a failure of a foreign limited liability company to register to do business in Georgia does not impair the validity of contracts").

Gower avers in his affidavit that Rialto is RREF's attorney in fact and RREF maintains no offices, employees or business records in the State of Georgia. Dckt. No. 543, Ex. 4. Debtor contends this Court cannot rely on RREF's representations about the extent of RREF's business within Georgia; however, Debtor has not put forth any evidence that RREF's conduct requires it to register with the Georgia Secretary of State. Debtor contends the burden of proof is upon RREF to establish it is exempt from qualifying to do business in Georgia, not upon the Debtor to provide evidence that RREF is improperly transacting business within the state. I disagree.

Pursuant to 11 U.S.C. §502 a proof of claim is deemed allowed if not objected to by a party in interest. 11 U.S.C. §502(a). A timely filed proof of claim is prima facie evidence of the amount and validity of the claim. Fed. R. Bankr. P. 3001(f).

22

An objecting party has the burden of negating the prima facie validity of the proof of claim. Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure §18:5 at 657 (2013-2 ed.). "If the objecting party overcomes the prima facie case, then the burden of proof falls to the party that would bear the burden outside of bankruptcy." In re Walston, 606 F. App'x 543, 546 (11th Cir. June 2, 2015) citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000); In re Zierke, 2015 WL 1541317, at *4 (Bankr. N.D. Iowa April 1, 2015)(objector must put forth substantial evidence that deprives the claim of its presumptive validity, once this burden is met the burden shifts to claimant to validate the claim); 9 Collier on Bankruptcy ¶3001.09[2] (16th ed. 2015)("Upon introduction of sufficient evidence by the objecting party, the burden of proof will fall on whichever party would bear that burden outside of bankruptcy."); Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure §18:5 at 657-58 ("The creditor [ ] has the burden of proving the validity of its claim by a preponderance of the evidence, unless the applicable nonbankruptcy law allocates the burden of proof on the claim differently. If the debtor does not produce enough evidence to overcome the prima facie validity of the claim, the burden does not shift to the claimant.").

23

In this case, Debtor does not challenge the creation of the initial debt to BB&T or the transfer to RREF, rather Debtor argues RREF may not file a proof of claim or defend its proof of claim because it is not duly qualified to conduct business in Georgia.  RREF's proofs of claim are prima facie evidence of the validity of its debt.  In response, Debtor must put forth sufficient evidence to rebut this presumption.  See Id.; Fed. R. Bankr. 3001(f); In re Zierke, 2015 WL 1541317, at *4 (Bankr. N.D. Iowa April 1, 2015)(objector must put forth substantial evidence that deprives the claim of its presumptive validity, once this burden is met the burden shifts to claimant to validate the claim).

Georgia law allocates the burden of proof to the party challenging a party's authority to conduct business within the state.  See LDH Properties, Inc. v. Morgan Guaranty Trust Co. of New York, 243 S.E.2d 278, 280 (Ga. Ct. App. 1978)(stating that the defendant had not shown that the lender had done anything within the State of Georgia requiring it to obtain a certificate of authority as a condition precedent to bringing this suit) citing Tankersley v. Sec. Nat'l Corp., 176 S.E.2d 274 (Ga. Ct. App. 1970)(corporation not authorized to do business in Georgia, could maintain suit on note it received in making a loan); see also Powder Springs Holdings, 754 S.E.2d at 659 (noting the plaintiff had not presented evidence the

24

lender's other business activities required it to qualify in Georgia); Safwat v. U.S. Leasing Corp., 268 S.E.2d 395, 396 (Ga. Ct. App. 1980)(the issue of the failure of a foreign corporation to register with the Secretary of State is a defense that must be raised by defendant in the trial court); McHale v. HJGM, Inc., 556 S.E.2d 853 (Ga. Ct. App. 2001)(plaintiff alleged personal jurisdiction exists over defendant because defendant transacts business in Georgia, however, plaintiff's allegations fail as he did not dispute defendant's affidavit that it has no office, employees, or agents in Georgia and never sent any representatives to Georgia for business purposes). In this case, Debtor does not dispute RREF's affidavit and fails to point to any conduct requiring qualification.

For these reasons and assuming the Georgia qualification to do business requirements are relevant in this bankruptcy case[7], Debtor has not shown as a matter of law that RREF must qualify to do business in Georgia in order to defend this summary judgment motion. Therefore, Debtor's motion for summary judgment based upon RREF's failure to qualify to do business in Georgia is denied.

**Release.**

Debtor argues he is entitled to summary judgment because

---

[7]  See n. 6, supra.

25

pursuant to the plain language of the Settlement Agreement, he is no longer liable for RREF's debt. Debtor argues "[i]n effect, the Settlement Agreement did away with all previous agreements and became the document by which the parties were expected to abide." Dckt. No. 528, p. 9. In support Debtor points to paragraphs 7 and 15 of the Settlement Agreement for the proposition that the Settlement Agreement constitutes and embodies the entire agreement between the parties and because the Settlement Agreement does not expressly incorporate the guaranties Debtor is no longer liable for this debt. Conversely, RREF argues Debtor misinterprets the Settlement Agreement. RREF asserts the plain language of the Settlement Agreement and documents executed contemporaneously therewith, when read together make it clear Debtor was not released from the guaranties.

When interpreting contracts, the court must first consider if the contract language is unambiguous, and, if so, the court enforces the contract's clear terms; second, if the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity; and third, if the ambiguity remains after use of the construction rules, the meaning of the contract must be decided by the fact-finder after trial. Caswell v. Anderson, 527 S.E.2d 582, 584 (Ga. Ct. App. 2000). When the contractual language

26

is unambiguous, it is not subject to judicial construction.  Jackson v. JHD Dental, LLC, 2011 WL 2441920, *8 (11th Cir. June 14, 2011) citing Ainsworth v. Perreault, 563 S.E.2d 135, 140-141(Ga. Ct. App. 2002)("where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court").

Contrary to Debtor's arguments, the Settlement Agreement does not plainly and unambiguously release Debtor from his guaranties.  Pursuant to the Settlement Agreement the BMB Notes were basically reamortized and the Obligors agreed to execute modified promissory notes and security deeds/security agreements to reflect these changes.  Settlement Agreement, Dckt. No. 528, Ex. G, p. 3. Nowhere in the Settlement Agreement is there a revocation or release of the guaranties.  In fact, paragraph 7 of the Settlement Agreement entitled "Limited Release of Obligors by BB&T" expressly provides "[t]he terms of this waiver and release provided by this paragraph shall not apply to or limit in any way the Obligors' obligations to BB&T under this Agreement or under the BMB Loan Documents as they are incorporated herein and modified herein."  Id. at 5 (emphasis added).  The BMB Notes Loan Documents were incorporated into the Settlement Agreement and only the BMB Notes and BMB security deeds/security agreements were modified, the rest of the BMB Notes

AO 72A
(Rev. 8/82)

Loan Documents, including Debtor's guaranty were not modified. <u>See</u> Dckt. No. 528, Ex. G, p. 2 (the Settlement's Agreement definition of "BMB Notes Loan Documents" expressly includes the guaranties), p. 3 ¶2(b), p. 5 ¶7 and p. 6 ¶15. Paragraph 15 of the Settlement Agreement supports this conclusion as it contains the same exception, "<u>Except as provided in the BMB Loan Documents</u> incorporated herein <u>and/or</u> modified herein" the Settlement Agreement embodies the full understanding of the parties and supercedes all prior agreements. <u>Id.</u> at 6. This language of "in the BMB Loan Documents" and "and/or" incorporates the guaranties as well as the BMB Notes and security deeds.

Furthermore, the attached modified BMB Notes and security deeds/security agreements incorporate the guaranties into the Settlement Agreement. The modified BMB Notes state the changes are modifications and not a novation and state that all other Loan Documents shall remain in full force and effect. <u>Id.</u> at 76 ("[i]t is expressly understood and agreed that this Agreement is a modification only and not a novation"). The modified BMB Notes further provide "[t]his Agreement shall not release or affect the liability of any co-makers, obligors, endorsers, or guarantors of said Promissory Note." <u>Id.</u> at 76. Similarly, the modified security deeds/security agreements state: "Except as herein expressly

28

AO 72A
(Rev. 8/82)

amended, each and every term, condition, warranty and provision of the Loan Documents shall remain in full force and effect, and such Loan Documents are hereby ratified, confirmed and approved by Borrower." Id. at 20. "Loan Documents" defined in the modified security deeds/agreements include the personal guaranties. Id. at 19 ("[T]he Loan Agreement, the Note, the Security Deed, and any and all other documents, instruments, and agreements executed in connection therewith shall be referred to herein as the 'Loan Documents.'"). The guaranties were "other documents" executed in connection with the Loan Agreement, the Note, and the Security Deed.

Neither party addresses the Settlement Agreement's use of "BMB Loan Documents" and "BMB Notes Loan Documents" or the fact that the Settlement Agreement only defines "BMB Notes Loan Documents". A review of the entire Settlement Agreement, leads the Court to conclude the terms are used interchangeably and the parties do not argue otherwise. The use of terms does not create an ambiguity. An ambiguity "does not exist merely because a contract can possibly be interpreted in more than one manner." See Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995) (citations omitted). However, even if an ambiguity exists after use of the rules of construction, summary judgment must be denied because Debtor would not be entitled to summary judgment as a matter of law.

29

Finally, the terms of the guaranties require any release therefrom to be in writing. <u>See eg.</u> Claim No. 32-6, guaranty; <u>See also</u> <u>Brooks v. Gwinnett Cmty. Bank</u>, 717 S.E.2d 647, 648 (Ga. Ct. App. 2011)("a release from a promise to answer for another's debt must be in writing"). Debtor does not point to any language expressly stating the guarantors are released. Rather, Debtor argues he would not have entered into the Settlement Agreement without being released from his personal guaranty of the debt. Conversely, RREF argues BB&T's attachment of the guaranties to their proofs of claim evidences BB&T's belief that the guarantors were not released by the terms of the Settlement Agreement. Given the language of the Settlement Agreement and related documents, Debtor has not established he is entitled to summary judgment as a matter of law.

For these reasons, Debtor's motion for summary judgement is ORDERED DENIED.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this  12<u>th</u>  day of January, 2016.

30

AO 72A
(Rev. 8/82)