**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
*By jpayton at 11:45 am, Mar 30, 2016*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
|  | ) | Number <u>13-10860</u> |
| WILLIAM JEFFREY BROOKS, | ) | |
|  | ) | |
| Debtor | ) | |
|  | ) | |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment filed by William Jeffrey Brooks ("Debtor") objecting to the proof of claim filed by RES-GA BAY ST. LOUIS, LLC ("RES-GA"). Debtor contends he is entitled to summary judgment for two reasons. First, Debtor argues RES-GA is not authorized to do business in Georgia and therefore lacks standing to pursue a claim in this bankruptcy. Second, Debtor argues he is not personally liable for RES-GA's claim because his ex-wife Ashley Burrell ("Burrell") purportedly forged his signature on the personal guaranty ("Guaranty") upon which RES-GA's claim is based. RES-GA disputes both of these arguments and contends questions of fact remain. RES-GA also argues Debtor lacks standing to pursue these arguments. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, Debtor's motion for summary judgment is DENIED.

## UNDISPUTED FACTS

RES-GA filed an $11.7 million dollar[1] proof of claim in Debtor's bankruptcy case.  Claim No. 12.  The proof of claim arises from a guaranty purportedly signed by Debtor as an owner of BCM Development, LLC ("BCM").  The other BCM members are Giorgio Medici ("Medici"), Roy Chandler, III ("Chandler") and Kevin Cape ("Cape").  BCM held an ownership interest in Pendergrass Development, LLC ("Pendergrass") which was formed to develop a residential housing project ("Project").

To finance the Project, Pendergrass acquired an eight million dollar loan ("Loan") from Alpha Bank & Trust ("Alpha").  The commitment letter dated October 4, 2006 ("Commitment Letter") required Debtor to personally guarantee the loan.[2]  Proof of Claim No. 12, Commitment Letter dated October 4, 2006.  Debtor acknowledges that he signed the Commitment Letter.  Id.  As to this loan, RES-GA is the successor to Alpha.  Claim No. 12-2, Assignment and Allonge.

At the BCM meeting to consider approval of the Project, Debtor says he voted against undertaking the Project and says he made it clear he would never personally guarantee the Loan.  Brooks

---

[1]  Rounded.

[2]  The Commitment Letter also required personal guaranties from the other individual principals of Pendergrass.

2

Trans., 141:17-142:15; Dckt. No. 532, Brooks Aff, ¶5-7.   Chandler and Cape confirm Debtor made it clear he did not want BCM to undertake the Project.   Chandler Trans., 21:1-15; Cape Trans., 15:23-25.   Debtor was ultimately outvoted by the other BCM members with respect to undertaking the Project, but he contends he remained emphatic that he was not going to sign a personal guaranty.   Brooks Trans. 141:17-142:15; Chandler Trans. 65:10-66:1-6; Cape Trans. 31:1-24; Dckt. No. 532, Brooks Aff., ¶7.

Debtor contends he did not sign the Guaranty, or authorize anyone to sign the Guaranty on his behalf.   The Guaranty purportedly bearing his signature is witnessed by Burrell[3] and notarized by Julie Dominiak .("Dominiak").   Dckt. No. 541. Ex. B, p. 12.   In an affidavit, Burrell avers that on or about October 6, 2006, she was called into BCM's Hoschton office and asked to sign Debtor's name to a document.   Aff. of Ashley Burrell, Dckt. No. 532, Ex. E.   She is unable to identify the Guaranty as the document she signed because she says she was only given the last page to execute.   See Burrell Trans., 40:7-16.   In her affidavit, she states "[t]he signature that purports to be [Debtor's] on the last page of the Guaranty appears to be my imitation of [Debtor's] signature."   See Aff. of Ashley Burrell, Dckt. No. 532, Ex. E.   Burrell has no recollection of her

---

[3]   Burrell was Debtor's wife at the time the Guaranty was signed.

3

signature being notarized, stating "I have no recollection of ever meeting this woman [Dominiack] or having her notarize anything for me." Burrell Trans., 38:13-23. Burrell does acknowledge the authenticity of her signature as the witness. Id. at 35:3-13.

RES-GA argues there is evidence that Debtor was well aware that he was required to provide a personal guaranty. The Commitment Letter signed by Debtor states he will provide a guaranty. The Equity Purchase Agreement signed by Debtor acknowledges that he is a guarantor of various loans to companies, including BCM. Dckt. No. 541, Ex. E. Other BCM members state they either saw Debtor sign the Guaranty,[4] or assumed he would sign once BCM voted to undertake the Project.[5] The Guaranty was purportedly signed before a witness and notary, but Burrell is unclear on exactly what document she signed. Dckt. No. 541, Exs. B, C, and E. RES-GA also argues Debtor ratified the Guaranty and ultimately benefitted when he sold his interest in BCM. Dckt. No. 540. RES-GA also points to the fact that Debtor did not dispute the authenticity of his signature in his initial response to the bank's demand letter and state court lawsuit regarding the debt; instead, Debtor claimed he had sold his interest

---

[4]  Medici says he saw Debtor sign the Guaranty. Medici Trans. 54:12-19; 55:22-25.

[5]  Chandler and Cape say they expected Debtor to sign the Guaranty after the BCM members voted to undertake the Pendergrass Project. Chandler Trans. 32:22-33:8; Cape Trans. 32:20-33:2.

✎AO 72A
(Rev. 8/82)

in BCM and was released, and he stated the bank's board minutes should reflect the same. <u>See</u> Dckt. No. 541, Exs. G and H.  Finally, RES-GA contends Debtor is estopped from raising these arguments because he never disputed the validity of this debt in his bankruptcy petition, schedules, plan or disclosure statement.[6]

As to the standing arguments, RES-GA attached a printout from the Georgia Secretary of State, Corporations Division showing RES-GA is registered to do business with the Georgia Secretary of State. <u>See</u> Dckt. No. 541, Ex. I.  Debtor argues Rialto Management Co., LLC ("Rialto") is attorney-in-fact for RES-GA and Rialto is not registered to do business with the Georgia Secretary of State. RES-GA avers it is not affiliated or in any way related to Rialto Management Co., LLC, and its attorney-in-fact is Rialto Capital Advisors, LLC.  RES-GA contends both RES-GA and Rialto Capital Advisors, LLC are registered with the Georgia Secretary of State and authorized to do business in Georgia.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[6] Initially, this was a chapter 11 bankruptcy.  Ultimately, it was voluntarily converted to a chapter 7 case.

5

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted). Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 288-89 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985)(citations omitted).

6

## STANDING.

Both parties object to the standing of the other.  RES-GA claims Debtor lacks standing in this chapter 7 bankruptcy to object to its proof of claim because there is no reasonable possibility that the bankruptcy case will produce a surplus.  Debtor objects to RES-GA's standing arguing its purported failure to duly qualify to do business in Georgia prevents it from filing and defending its proof of claim.

Standing in bankruptcy cases is narrower than Article III standing and requires a person to have a pecuniary interest in the outcome of the bankruptcy proceedings.  In re Cult Awareness Network, Inc., 151 F.3d 605, 607 (7th Cir. 1998).  For the following reasons, the Court finds both parties have standing to proceed in this contested matter.

### Debtor's Standing.

A timely filed proof of claim is prima facie evidence of the amount and validity of the claim.  Fed. R. Bankr. P. 3001(f).  It is deemed allowed if not objected to by a party in interest.  11 U.S.C. §502(a).  An objecting party has the burden of negating the prima facie validity of the proof of claim.  Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure §18:5 at 657 (2013-2 ed.).  "If the objecting party

7

overcomes the prima facie case, then the burden of proof falls to the party that would bear the burden outside of bankruptcy." <u>In re Walston</u>, 606 F. App'x 543, 546 (11th Cir. June 2, 2015) <u>citing Raleigh v. Ill. Dep't of Revenue</u>, 530 U.S. 15, 20 (2000); <u>In re Zierke</u>, 2015 WL 1541317, at *4 (Bankr. N.D. Iowa April 1, 2015)(objector must put forth substantial evidence that deprives the claim of its presumptive validity, once this burden is met the burden shifts to claimant to validate the claim); 9 <u>Collier on Bankruptcy</u> ¶3001.09[2] (16th ed. 2015)("Upon introduction of sufficient evidence by the objecting party, the burden of proof will fall on whichever party would bear that burden outside of bankruptcy."); Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, <u>Chapter 13 Practice and Procedure</u> §18:5 at 657-58 ("The creditor [ ] has the burden of proving the validity of its claim by a preponderance of the evidence, unless the applicable nonbankruptcy law allocates the burden of proof on the claim differently. If the debtor does not produce enough evidence to overcome the prima facie validity of the claim, the burden does not shift to the claimant.").

Generally, in a chapter 7 bankruptcy case, the chapter 7 trustee is the proper party to review and object to proofs of claim. <u>See In re Trusted Net Media Holdings, LLC</u>, 334 B.R. 470, 475 (Bankr.

N.D. Ga. 2005)("the majority of courts have ruled that a chapter 7 trustee alone may file objections to proofs of claim."). Chapter 7 debtors usually do not have standing as a "party in interest" to object to the proof of claim because the claim allowance/disallowance process in a chapter 7 bankruptcy case normally only affects the pecuniary rights of creditors as to the amount of distribution available for such creditors. In re Cult Awareness Network, Inc., 151 F.3d at 607 ("[T]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings."); see also In re Costello, 184 B.R. 166, 168 (Bankr. M.D. Fla. 1995).

RES-GA argues Debtor lacks standing to challenge its proof of claim because this is a non-surplus chapter 7 bankruptcy. Without a surplus, RES-GA contends Debtor has no pecuniary interest in the outcome of this dispute. See Caserta v. Tobin, 175 B.R. 773, 775 (S.D. Fla. 1994)(in a chapter 7 case where a trustee was appointed and there is no surplus to create a pecuniary interest on debtor's behalf, debtor lacked standing to object to creditor's claims). However, courts have carved out other exceptions to this general rule such as: when the chapter 7 trustee refuses to or neglects his duty to object to claims; or when the debt at issue is one that may not be subject to discharge. See In re Mandel, 2016

WL 874359, at *3-4 (5th Cir. March 7, 2016)(finding a chapter 7 debtor in a non-surplus case had standing to appeal a claim allowance order where claimant had filed a §727 action against the debtor); In re Knight-Celotex, LLC, 695 F.3d 714, 720 (7th Cir. 2012)("[t]he prospect that [the assigned] claims might not be entirely discharged, . . . is sufficient to give [the individual debtor] standing."); In re Steffen, 2009 WL 890124, at *1 (M.D. Fla. March 31, 2009)(debtor had standing where claim was not dischargeable); In re Cherne, 514 B.R. 616, 621 (Bankr. D. Idaho 2014)("there are two recognized exceptions to the proposition that a chapter 7 debtor lacks standing to object to a creditor's proof of claim: (1) when disallowance of the claim would create a surplus case, with the excess amounts payable to the debtor; and (2) where the claim at issue would not be dischargeable.") citing In re Wellman, 378 B.R. 416, at *1 n. 5 (B.A.P. 9th Cir. 2007)(a chapter 7 debtor has "[s]tanding to object to claims . . . when there is a sufficient possibility of a surplus to give the chapter 7 debtor a pecuniary interest or when the claim involved will not be discharged."); In re Curry, 409 B.R. 831, 838 (Bankr. N.D. Tex. 2009)("a debtor has a pecuniary interest in the objection of a claim that may be non-dischargeable"); but see In re Adams, 424 B.R. 434 (Bankr. N.D. Ill. 2010)(finding chapter 7 debtor in a non-

10

surplus case lacked standing to object to sale of an estate asset).

In the current case, RES-GA has filed an 11 U.S.C. §727 complaint against Debtor arguing he should not receive a discharge of his debts, including RES-GA's debt which Debtor claims he does not owe. Debtor, as a defendant in the §727 dischargeability action, has a particularized imminent injury and he should be able to raise and preserve all the legal defenses he has to the complaint. Where a debtor is objecting to the claim of a §727 plaintiff, a debtor has a pecuniary interest sufficient to have standing to object to the proof of claim. See In re Mandel, 2016 WL 874359, at *3-4 (noting the res judicata effect an order on the objection to claim could have in the §727 discharge action and finding the debtor had standing to object to the claim); In re Knight-Celotex, LLC, 695 F.3d at 720("[b]ankruptcy standing is narrower than constitutional standing and requires that a person 'have a pecuniary interest in the outcome of the bankruptcy proceedings,'. . . [t]he prospect that [the assigned] claims might not be entirely discharged, . . . is sufficient to give [the individual debtor] standing."); In re Wellman, 378 B.R. 416, n. 5 (chapter 7 debtor had standing to object to a claim because the debt was not discharged as a result of the §727(a)(4) judgment against the debtor); In re Toms, 229 B.R. 646, 651 (Bankr. E.D. Pa.

11

1999)("[A] second exception to the principle that chapter 7 debtors have no standing to object to claims exists for those claims which are not discharged by virtue of section 727."). For these reasons, Debtor has standing to object to RES-GA's proof of claim.

### RES-GA's Standing.

Debtor argues RES-GA does not have standing to pursue its claim contending it is not duly qualified to do business in Georgia. However, RES-GA has produced a printout from the Georgia Secretary of State's website showing RES-GA is registered to do business in the Georgia. See Dckt. No. 541, Ex. I. Therefore, Debtor's motion for summary judgment based upon RES-GA's purported lack of standing is denied.

### FORGERY.

Debtor's motion for summary judgment on the grounds that his signature is an unauthorized forgery also is denied. Material questions of fact remain concerning whether Debtor signed the Guaranty. The veracity and credibility of the witnesses need to be assessed. Burrell is unclear on what document she actually signed. The Guaranty has a witness and a notary which along with Burrell's statements leave questions of material facts outstanding. Furthermore, Debtor signed papers listing him as a guarantor, and he failed to raise this forgery defense in his initial response to the

12

AO 72A
(Rev. 8/82)

lender's collection action.   He also failed to raise this issue in his bankruptcy petition, initial schedules, plan and disclosure statement.   In addition, he purportedly benefitted financially from the sale of BCM.   All these factors go to the credibility of the witnesses and whether Debtor ratified the debt.   The Court needs to consider the evidence and demeanor of the witnesses and therefore summary judgment is not appropriate at this time.   See Moorman v. UnumProvident Corp., 464 F.3d 1260, 1266, n. 1 (11th Cir. 2006)("Credibility determinations at the summary judgment stage are impermissible.")(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000)); In re Harless, 2013 WL 1176189, *7 (Bankr. N.D. Ala. March 21, 2013)(summary judgment inappropriate when credibility determinations remain).

For these reasons, Debtor's motion for summary judgment is ORDERED DENIED.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this __30th__ day of March, 2016.

13

AO 72A
(Rev. 8/82)