FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 5:11 pm, Mar 31, 2016

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 7 Case |
| ) | Number <u>13-10860</u> |
| WILLIAM JEFFREY BROOKS ) | |
| ) | |
| Debtor ) | |
| _____ ) | |

## **OPINION AND ORDER**

Pursuant to notice a hearing was held December 4, 2015 on Debtor's Application for Administrative Expense with objections filed by RES-GA Bay St. Louis, LLC ("RES-GA") and RREF II WBC Acquisitions, LLC ("RREF" or "Bank"). This is a core proceeding under 28 U.S.C. §157(b)(2)(B) and the Court has jurisdiction under 28 U.S.C. §1334. For the reasons set forth on the record at the hearing, and for the following reasons, Debtor's application for an administrative expense is denied.

## **FINDINGS OF FACT**

Debtor's application for an administrative expense claim seeks $53,255.92 for the maintenance and upkeep of real property and animals located on Mitchell Road from January 2015 to July 2015. Debtor testified the expenses were incurred maintaining the property as a hunting preserve for deer and wild hogs. The application includes Debtor's maintenance of the property including fencing on

640 acres and feeding animals (deer, llamas, mules, goats, hogs and a horse). In support of the application, Debtor submitted a chart prepared by Debtor and Ginger Parris, Debtor's girlfriend, listing purported expenses incurred from January 2015 to July 2015. Debtor's Ex. 1. Ms. Parris testified that she prepared the chart from information she obtained from Debtor, invoices, and from contacting some of the businesses. Debtor provided some invoices but did not submit corresponding documentation such as bank statements and cancelled checks evidencing Debtor's payment of these expenses. On some of the expenses listed in the chart, Debtor did not have documentation, bills, or time records. <u>See e.g.</u> Debtor's Ex. 1 and 2, Hr'g Dec. 4, 2015 (no statements were provided for Washington EMC.). Debtor based the labor portion of his claim on his best estimate of 20 hours a week at $25.00 per hour. Both Debtor and Ms. Parris say this underestimates the actual time Debtor expended maintaining the property. They also testified that a time sheet ledger was maintained for Debtor's sons' work but the ledger was not produced at the hearing.[1]

Debtor and Ms. Parris testified that some expense payments were made in cash and some were made by check but neither

---

[1] A summary of amounts paid was tendered but no time sheets were submitted.

2

Debtor nor Ms. Parris could identify from which account(s) payments were made. No complete check register, bank statements, or cancelled checks were tendered at the hearing. Debtor acknowledges some of the expenses may have been paid by a business owned by his ex-girlfriend, B & A Flowers.[2] Many of the invoices for which Debtor seeks reimbursement have the address of B & A Flowers, 1385 Washington Road, Thomson, GA. Debtor's Ex. 2, Hr'g Dec. 4, 2015. The name/address of the payors on some of the invoices is unclear. See e.g. Debtor's Ex. 2, Smith Farm Supply Invoices, Hr'g Dec. 4, 2015 (The second line of the address, under the Debtor's name and above the street address, is redacted on some of the invoices; and the address is B & A Flowers' address). Debtor was unable to explain the redaction on the invoices. He testified that to the extent another entity paid these expenses, he was ultimately responsible for paying that entity back.

Furthermore, Debtor testified the Chapter 7 Trustee ("Trustee") agreed to allow him to stay on the real property rent free if he maintained it.[3] At the hearing, the Trustee acknowledged

---

[2] Debtor says he works for B & A Flowers. See Dckt. No. 86, Adversary Proceeding No. 14-01016 for an explanation of B & A Flowers.

[3] The Trustee never filed a motion to employ Debtor, therefore, Debtor would not qualify for an administrative expense claim under 11 U.S.C. §503(b)(2). See In re Concrete Prods., Inc., 208 B.R.

3

some of the expenses were incurred at his request but he says it was under a quid pro quo agreement between Debtor and the Trustee; whereby the Trustee allowed Debtor and Debtor's two children to live at the property rent free in return for the maintenance and upkeep of the property. There is no written agreement between Debtor and the Trustee detailing the terms of this arrangement. Regarding the current motion, the Trustee expressed reservations about allowing Debtor's administrative claim without receipts or cancelled checks to support the claim.

Debtor argues RREF lacks standing to object to his administrative expense claim because it is not registered to do business in the State of Georgia and because RREF did not seek confirmation of its foreclosure action in state court before seeking deficiency claims against Debtor in this bankruptcy. Conversely, RREF argues it does not have to register with the Georgia Secretary of State in order to be a party in interest entitled to participate in this bankruptcy and confirmation of the foreclosure is not necessary before seeking payment from Debtor under the terms of the guaranty.

Prior to Debtor's bankruptcy, Debtor unconditionally

---

1000, 1006 (Bankr. S.D. Ga. 1996). For these reasons, and the reasons set forth in this order, any claim under §503(b)(2) is denied.

4

guaranteed numerous promissory notes in favor of BB&T. Post-petition, BB&T assigned its interest in these loans to RREF. RREF filed numerous proofs of claim in Debtor's bankruptcy based upon the personal guaranties executed by Debtor. <u>See</u> Claim Nos. 32-45. The guaranties attached to the proofs of claim each state they are an absolute and unconditional guaranty. <u>See</u> <u>e.g.</u> Claim No. 32-6, p. 22("As an inducement to Branch Banking and Trust Company and/or BB&T, FSB (collectively Bank) to extend credit to and to otherwise deal with [Borrower], and in consideration thereof, the undersigned (and each of the undersigned jointly and severally if more than one) hereby absolutely and unconditionally guarantees to Bank and its successors and assigns the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities . . . ."). The Guaranties further state in pertinent part:

> Bank may receive and accept from time to time any securities or other property as collateral to any such notes, drafts, debts, obligations and liabilities, and may surrender, compromise, exchange and release absolutely the same or any part thereof at anytime without notice to the undersigned and without in any manner affecting the obligation and liability of the undersigned hereby created. The undersigned agrees that Bank shall have no obligation to protect, perfect, secure, or insure any security interests, liens or encumbrances now or hereafter held for the indebtedness, obligations and liabilities for which this Guaranty is made
> .

5

. . .

> The obligation and liability on the part of the undersigned shall be primary, and not a secondary obligation and liability, payable immediately upon demand without recourse first having been had by Bank against [Borrower] or any other guarantor, person, firm, or corporation, and without first resorting to any property held by Bank as collateral security; and the undersigned hereby waives the benefits of all provisions of law, including but not limited to the provisions of O.C.G.A. section 10-7-24 or its successor, for stay or delay of execution or sale of property or other satisfaction of judgment against the undersigned on account of obligation liability hereunder until judgment be obtained therefor against the [Borrower] and execution thereon returned unsatisfied, or until it is shown that the [Borrower] has no property available for the satisfaction of the indebtedness, obligation or liability guaranteed hereby. Or until any other proceedings can be had
>
> . . .
>
> In addition to the other waivers set forth elsewhere in this Guaranty, the undersigned also hereby waives and agrees not to assert or take advantage of . . . (d) any defense based upon an election of remedies by Bank which destroys or otherwise impairs any subrogation rights of the undersigned to proceed against [Borrower] for reimbursement or both; (e) any defense based upon failure of Bank to commence an action against [Borrower] or any other guarantor of the indebtedness guaranteed hereby . . . (k) any defense based upon lack of due diligence by the Bank and the collection, protection, or realization upon any collateral

6

> securing the indebtedness evidenced by the Note or any of the other Loan Documents or both . . . and (m) any other legal or equitable defenses whatsoever to which the undersigned might be entitled, to the extent permitted by law, unless such defenses are based upon willful misconduct of the Bank
>
> •
> •
> •
> •
>
> At any public or private sale of any security or collateral for any indebtedness or any part hereof guaranteed hereby, whether by foreclosure or otherwise, Bank, may in its discretion, purchase all of any part of such security or collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it pursuant to the Note(s) or any of the other Loan Documents without prejudice to Bank's remedies hereunder against the undersigned for deficiencies, if allowed by applicable law. If the indebtedness guaranteed hereby is partially paid by reason of the election of Bank, its successors, endorsees or assigns, to pursue any of the remedies available to Bank or if such indebtedness is otherwise partially paid, then the Guaranty shall nevertheless remain in full force and effect, and the undersigned shall remain liable for the entire balance of the indebtedness guaranteed hereby, even though any rights which the undersigned may have against [Borrower] may be destroyed or diminished by the exercise of any such remedy.

Id. at 22-24.

## CONCLUSIONS OF LAW

Standing of RREF.

"Bankruptcy standing is narrower than Article III standing

. . . [t]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings." In re Cult Awareness Network, Inc., 151 F.3d 605, 607 (7th Cir. 1998). Debtor argues RREF lacks standing to object to his application for an administrative expense claim because it failed to obtain confirmation of the foreclosure sale of some of the pledged property and therefore it is not entitled to pursue its deficiency claims. As a result, Debtor contends RREF does not have a pecuniary interest sufficient for standing in Debtor's bankruptcy case.[4]

In response, RREF contends confirmation of the foreclosure sale is not necessary to pursue Debtor under the terms of the guaranty. In support, RREF cites the case of Cmty & S. Bank v. DCB Invs., LLC, 760 S.E.2d 210, 214 (Ga. Ct. App. 2014) where the Georgia Court of Appeals held confirmation of the foreclosure sale is not required to pursue a guarantor where a guaranty includes an express waiver of any and all defenses to the borrowers' liability on the notes. Cmty & S. Bank v. DCB Inv., LLC, 760 S.E.2d 210, 216 (Ga. Ct. App. 2014) (citing HWA Props., Inc. v. Cmty. & S. Bank, 746 S.E.2d 609 (Ga. Ct. App. 2013). The court stated "a guarantor may

---

[4] Debtor's other arguments as to the standing of RREF and RES-GA are addressed in the Court's prior orders finding they have standing. See Dckt. Nos. 588 and 602, Chapter 7 Case No. 13-10860. Those rulings are incorporated herein and Debtor's standing challenge on these grounds is denied.

8

consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor." Cmty & S. Bank v. DCB Inv., LLC, 760 S.E.2d at 214; Ameris Bank v. Martin, 2015 WL 5243329, at *3 (S.D. Ga. Sept. 9, 2015)(under the terms of the guaranty, confirmation of foreclosure sale not required before pursuing guarantor); CertusBank, N.A v. Miller, 2015 WL 2084613, at *4 (M.D. Ga. May 5, 2015)(upholding waivers of defenses in guaranty); RES-GA SCL, LLC v. Stonecrest Land LLC, 776 S.E.2d 489 (Ga. Ct. App. 2015)(upholding terms of guaranty that waived "any defense to any of the liabilities which may be available to or could be asserted by the Principal, except for payment"). In the guaranties in question, Debtor waived any all defenses except for willful misconduct of the lender. Specifically, Debtor waived:

> d) any defense based upon an election of remedies by Bank which destroys or otherwise impairs any subrogation rights of the undersigned to proceed against [Borrower] for reimbursement or both; (e) any defense based upon failure of Bank to commence an action against [Borrower] or any other guarantor of the indebtedness guaranteed hereby . . . (k) any defense based upon lack of due diligence by the Bank and the collection, protection, or realization upon any collateral securing the indebtedness evidenced by the Note or any of the other Loan Documents or both . . . and (m) any other legal or equitable defenses whatsoever to which the undersigned might be entitled, to the extent permitted by law,

9

>> unless such defenses are based upon willful misconduct of the Bank
>
> .
> .
> .
> .
>
> At any public or private sale of any security or collateral for any indebtedness or any part hereof guaranteed hereby, whether by foreclosure or otherwise, Bank, may in its discretion, purchase all of any part of such security or collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it pursuant to the Note(s) or any of the other Loan Documents without prejudice to Bank's remedies hereunder against the undersigned for deficiencies, if allowed by applicable law. If the indebtedness guaranteed hereby is partially paid by reason of the election of Bank, its successors, endorsees or assigns, to pursue any of the remedies available to Bank or if such indebtedness is otherwise partially paid, then the Guaranty shall nevertheless remain in full force and effect, and the undersigned shall remain liable for the entire balance of the indebtedness guaranteed hereby, even though any rights which the undersigned may have against [Borrower] may be destroyed or diminished by the exercise of any such remedy.

See e.g. Claim No. 32-6, p. 22. This language is similar to the language of the guaranties in the Cmty & S. Bank and HWA Props., Inc. cases. Based upon the rationale of these cases and the language of the guaranties in question, I find RREF's failure to obtain confirmation of the foreclosure sale does not prevent its pursuit of its deficiency claims. Therefore, RREF has standing to

10

object to the Debtor's claim for an administrative expense.

Furthermore, as addressed in the previous order, Debtor guaranteed two other BB&T loans which were subsequently assigned to RREF. See Dckt. No. 86, Adversary Proceeding No. 14-01016. Debtor does not raise the confirmation argument as to these other loans. Therefore, RREF has standing to object to Debtor's administrative expense claim based upon these two loans.

**Administrative Claim.**

Debtor seeks $53,255.92 as an administrative expense claim to be paid ahead of the claims of his unsecured creditors.[5] RREF and RES-GA object arguing Debtor has not carried his evidentiary burden to show his entitlement to this administrative expense claim. They also contend Debtor benefitted personally from the maintenance and upkeep of the property as he lived there rent-free. They argue making the property more marketable is too speculative and not a concrete benefit to merit administrative expense classification. For the reasons set forth at the hearing and below, Debtor's claim is denied.

Pursuant to 11 U.S.C. §503:

After notice and a hearing, there shall be allowed administrative expenses . . . including

---

[5] At the hearing, the Trustee stated that this bankruptcy estate may ultimately be declared administratively insolvent.

11

> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case.

11 U.S.C. §503(b)(1)(A). Debtor, as the one seeking an administrative expense claim, has the burden of proof to establish by the preponderance of the evidence that the expenses were actual and necessary. In re Food, etc., L.L.C., 281 B.R. 82, 84 (Bankr. S.D. Ala. 2001)(burden of proof is preponderance of the evidence); In re Dayhuff, 185 B.R. 971, 974 (Bankr. N.D. Ga. 1995)(burden of proof is on claimant). Applications for administrative expense claims are strictly construed against the claimant. In re Dayhuff, 185 B.R. at 974. "There must be an actual, concrete benefit to the estate before a claim is allowable . . . 'as an administrative expense.'" Broadcast Corp. of Georgia v. Broadfoot, 54 B.R. 606, 613 (N.D. Ga. 1985). "'There must be an actual, concrete benefit to the estate before a claim is allowable . . .' as an administrative expense." In re Subscription Television of Greater Atlanta, 789 F.2d 1530, 1532 (11th Cir. 1986). "That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an

12

'actual, necessary cost and expense of preserving the estate.'" In re Subscription Television of Greater Atlanta, 789 F.2d 1530 (11th Cir. 1986). "Bankruptcy courts have broad discretion in determining whether an administrative expense claim justifies allowance." In re Dayhuff, 185 B.R. at 973.

Based upon Debtor's testimony and the evidence presented, Debtor has failed to establish by the preponderance of the evidence his entitlement to this claim. The Trustee testified there was a quid pro quo agreement between the Trustee and Debtor whereby Debtor was allowed to remain on the property rent free with his family in return for maintaining the property and feeding the animals. This is a chapter 7 proceeding where debtors are not debtors-in-possession. Debtor acknowledges the Trustee agreed to allow him to stay on the property rent free provided he maintained the property. "As a general rule, creditors cannot receive administrative priority treatment of expenses which they incurred to benefit themselves, rather than the debtor's estate." In re Dayhuff, 185 B.R. at 975. As in Dayhuff, Debtor was motivated by an independent personal interest in maintaining the property and he cannot be compensated as administrative expense priority claimant in addition to the other benefits he received. Id. Given these facts and the state of the evidence, Debtor cannot benefit from the quid pro quo arrangement

13

and still be reimbursed for these purported expenses.

Furthermore, even considering the merits of Debtor's claim, Debtor has failed to carry his burden of proof. The evidence he submitted does not establish his entitlement to this claim by a preponderance of the evidence. <u>In re Food, etc., L.L.C.</u>, 281 B.R. at 84 (burden of proof is preponderance of the evidence). At the hearing, Debtor failed to tender any bank statements, cancelled checks or receipts showing payments made by Debtor. Debtor acknowledges that third party entities may have paid some of the expenses. Many of the invoices appear to have the payor's name redacted. <u>See e.g.</u> Debtor's Ex. 2, Hr'g Dec. 4, 2015 (The second line of the address of the Smith Farm Supply invoices, under the Debtor's name and above the street address is redacted on some of the invoices; and on the McDuffie Feed & Seed the top line above Debtor's name appears redacted). Debtor argues that even if a third party paid for the expenses, he was still liable to that entity. However, Debtor did not provide sufficient evidence showing Debtor reimbursed these third party entities for these expenses. He failed to tender at the hearing any cancelled checks, bank statements, ledgers to support his claim. Furthermore, many of the charges on the chart do not have invoices to support the claim. <u>See e.g.</u> Debtor's Exs. 1 and 2, Hr'g Dec. 4, 2015 (expenses for Washington

14

EMC). Given these facts, the testimony and evidence tendered are insufficient to establish Debtor's entitlement to this claim of administrative expense.

The hearing to consider Debtor's motion was an evidentiary hearing with an objection filed. See Gen. Order 2003-1 (unless noticed otherwise, all hearings are evidentiary hearings in which witnesses may testify). Debtor failed to carry his burden of proof to establish his entitlement to this claim. The fact that Debtor's prior administrative expense claim was approved without Debtor tendering such evidence does not change this conclusion. See Dckt. Nos. 439 and 480 (prior application and order approving). As to Debtor's first claim for an administrative expense, no party in interest filed an objection to the request. Six months later Debtor filed the current claim for an administrative expense and objections were filed. With the objections, Debtor was required to carry his burden of proof and he failed to do so.

As for the labor, no time records were tendered. Debtor and Ms. Parris testified they estimated Debtor's labor at 20 hours a week at $25.00 per hour, but no time sheets were kept. Debtor stated he paid his son $10.00/hour up to $1,000.00 for 4 months of work. There were no time records,[6] cancelled checks, bank

---

[6] Debtor and Ms. Parris testified they did record and track Debtor's sons' hours, but they failed to tender the ledger.

15

statements, or receipts produced to support these claims. Due to the lack of sufficient evidence, the Court cannot conclude that the expenses were "actual" expenses or that they were not included in the quid pro quo arrangement. See In re Dayhuff, 185 B.R. at 974 (holding that claims based solely on expenditures of non-professional time by the claimant do not constitute "actual" expenses).

Debtor also argues his maintenance of the property helped the bankruptcy estate sell the property for a greater amount than if the property was in disrepair and non-compliant with the Georgia Department of Agriculture's requirements for a hunting preserve. This is a speculative, potential benefit and not an actual concrete benefit. See In re Subscription Television of Greater Atlanta, 789 F.2d at 1532 ("That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an 'actual, necessary cost and expense of preserving the estate.'"). Furthermore, without the proper documentation Debtor has failed to carry his burden of proof.

For the reasons set forth on the record at the hearing and for the foregoing reasons, Debtor's application for an

16

administrative expense claim is ORDERED DENIED.[7]

*Susan D. Barrett*
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia

this 31st day of March 2016.

---

[7] The Court's denial of this claim is regardless of whether Debtor retained money from any hunts on the property occurring during this time frame.

17